IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

Joan DOE
Plaintiff,            )
                      )
v.                    )     Civil Action No. 22-5137
                      )
                      )

BOARD OF TRUSTEES FOR
THE UNIVERSITY OF ARKANSAS,
UNIVERSITY OF ARKANSAS
PRESIDENT AND CEO
DONALD BOBBITT, AND THE
UNIVERSITY OF ARKANSAS
SCHOOL OF LAW,
Defendants

PLAINTIFF'S BRIEF ON MOTION FOR EX PARTE PRELIMINARY INJUNCTION, IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER

I. TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Table of Contents ................................................................................................ | 1 |
| II. | Summary of Motion and the Legal Authority to Issue ........................................... | 1-2 |
| III. | Table of Authorities ............................................................................................. | 3-4 |
| IV. | Statement of the Facts ........................................................................................ | 4-7 |
| V. | Statement of the Issues ....................................................................................... | 7-10 |
| VI. | Argument ............................................................................................................ | 10-14 |
| VII. | Conclusion .......................................................................................................... | 14 |

II. SUMMARY OF THE MOTION AND THE LEGAL AUTHORITY TO ISSUE

1.      Plaintiff seeks a preliminary injunction barring enforcement of Defendant's conduct sanctions because they violate the ADA's (American's with Disabilities Act) prohibition against the screening and exclusion of individuals with disabilities, and because they are an unconstitutional violation of due process.

2.      The Court may issue a preliminary injunction when the movant demonstrates: (1) the probability the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) that the balance of the threat of irreparable harm to the movant and the threat of injury granting the injunction will inflict on Defendant tips in favor of the movant; and, (4) that the public interest is served.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The facts of Plaintiff's claim satisfy each element.

3.      The Court has authority to issue the preliminary injunction under *Ark. and Fed. R. of Civ. P.* 65(a), 28 U.S.C. § 1657[1], and 5 U.S.C. § 705[2].  Under *Ark. and Fed. R. of Civ. P.* 65(a) the Court may issue a preliminary injunction on only notice to the nonmoving party, that is, without conducting a hearing.  Under 28 U.S.C. § 1657, the Court may determine the order in which civil actions are heard and determined except that the court shall expedite any action for preliminary injunctive relief or any other action if good cause is shown.  Good cause is shown if a right under the U.S. Constitution or a federal statute is maintained in a fact based context that shows the request for expedited consideration is valid.  Under 5 U.S.C. § 705, the Court may

---

[1] " ... except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown.  For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit."  28 U.S.C. § 1657.

[2] A reviewing court may issue all necessary and appropriate process to preserve the status or rights of a moving party pending conclusion of review proceedings.  5 U.S.C. § 705

"issue all necessary and appropriate process" to preserve a party's status or rights pending determination of the merits.

### III. TABLE OF AUTHORITIES

**Statutes**                                                        **Page**

*Ark. R. of Civ. P. 65(a)* ......................................................................................... 2

*Fed. R. of Civ. P. 65(a)* ......................................................................................... 2

*28 U.S.C. § 1657* ................................................................................................. 2

*5 U.S.C. § 705* ..................................................................................................... 2

*Americans with Disabilities Act, Title II, §§ 12132 et. seq.* .............................. 1, 6, 7, 11, 12, 16, *supra*

**Cases**

*Able v. United States*, 44 F.3d at 131-32 (2nd Cir. 1995) .................................... 11

*Bragdon v. Abbot*, 524 U.S. 624 (1998) .............................................................. 12

*Connecticut v. Doehr*, 501 U.S. 1 (1991)

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) ......................... 2, 10

*Doe v. Cummins*, 662 Fed. Appx. 437, 449 (6th Cir. 2016). ............................... 19

*Doe v. Purdue University*, 928 F.3d 652, 661 (7th Cir. 2019) ........................... 18

*Doe v. University of Arkansas – Fayetteville*, 974 F.3e 858 (8th Cir. 2020). ................... 19

*Goss v. Lopez*, 419 U.S. 565, 574 (1975). ........................................................... 15

*Jegley v. Picado*, 349 Ark. 600, 631–32, (2002) ................................................. 15

*Lors v. Dean*, 746 F.3d 857, 865-66 (8th Cir. 2014) ........................................... 13

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................... 15

*Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) ........................................ 13

*Phelps-Roper v. Nixon*, 545 F.3d 685, 694 (8th Cir. 2008) .................................................... 18

*Planned Parenthood v. Rounds,* 530 F.3d 724 (8th Cir. 2008) ............................................. 10

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2nd Cir. 1989) .............................. 11

*Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). ................................................... 11

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs.*,
826 F.3d 1030 1040 (8th Cir. 2006) . ..................................................................................... 11

*Smith v. Denton*, 320 Ark. 253, 261 (1995) ........................................................................... 15

*Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C. Cir. 1958) .......................... 14

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ................................................... 12

## IV. STATEMENT OF THE FACTS

1. Plaintiff is a third year law student at the University of Arkansas School of Law. Plaintiff's grade point average is 2.85. Plaintiff needs only fourteen credit hours to qualify for graduation.

2. In the fall 2021 semester Plaintiff made written reports to law school faculty of pervasive harassment and intrusion she experienced both on and off Defendant's grounds.

3. On Sept. 6, 2021, Plaintiff was encouraged via phone call to attend a meeting at Defendant's law school in which help would be provided to her. When Plaintiff arrived for the meeting, she learned the meeting would be with Defendant's officials who possess mental health provider certification. Plaintiff declined to participate.

4. On Sept. 7, Plaintiff received an email notifying her that Defendant had concerns about its ability to certify her character and fitness to practice law. *Ex. 35.*

4

5.	The email stated the causes of concern were conversations with professors, inability to prepare for class, and affected academic performance without any specifics articulated. *Id.*. The email required Plaintiff's attendance at a meeting scheduled the next day in direct conflict with one of Plaintiff's classes, and it issued a prohibition on Plaintiff's communication with any faculty members other than Dean Susannah Pollvogt about "being monitored and related activity." *Id.*.

6.	On Sept. 8, Plaintiff was ordered by Defendant via email to contact JLAP "to discuss counseling options." On Sept. 9, Plaintiff was ordered to "follow the course of action recommended by [JLAP], including but not limited to a series of counseling appointments."

7.	On Sept. 9, Plaintiff advised JLAP did not recommend counseling.

8.	On Sept. 10, Defendant ordered Plaintiff to contact JLAP by "the end of business Monday, 9/13/2021" and "arrange for a psychiatric evaluation."

9.	On Sept. 27, Plaintiff received an email from Defendant directing her to sign JLAP's release of information. Plaintiff requested additional time, and Plaintiff offered to provide the requested information directly to Defendant. Defendant insisted Plaintiff provide a release of information to JLAP.

10.	On Sept. 27, Plaintiff requested a reasonable time extension and for the authority that permits the law school to require a student's submission of personal medical information to JLAP.

11.	On Sept. 27, Plaintiff was notified that her failure to release her medical records to JLAP meant she was not in compliance with the process. Plaintiff had no knowledge that "the process," or noncompliance therewith, involved the threat of suspension.

12. Plaintiff asked again for a reasonable time extension and expressed a willingness and desire to comply. Defendant was unmoved and advised Plaintiff to complete the release that day (Sept. 28).

13. On Sept. 30, without discussion or prior notice, Plaintiff was placed on interim suspension.

14. The interim suspension contained three allegations of misconduct. *Id.*. The first involves Plaintiff's refusal to comply with Defendant's order of medical care and order to release medical records to an unsecured recipient. *Id.*. The second and third allegations center on allegations pertaining to Plaintiff's dog. *Id.*.

15. Defendant's own policy manual does not permit suspension for violations of conduct codes unless there is a determination of a threat to the safety of the university.

16. Defendant's policy manuals require conduct matters be adjudicated using a preponderance standard of proof, or a finding of intent.

17. None of the three letters of judicial outcome offer a statement of proof using any evidentiary standard.

18. On Nov. 22, Defendant's conduct board of appeal issued the final judicial outcome ordering Plaintiff's suspension until May 2022, pending completion of numerous misconduct sanctions including payment of conduct assessment fees, completion of mental health treatment, and release of records from said treatment to Defendant's hearing officer.

19. Plaintiff submits three medical recommendation letters for the Court's review. **Ex. 10, 6, 45**. The letters provide professional recommendations that Plaintiff be allowed to resume enrollment. The first letter was verbally offered to Defendant multiple times, contingent upon assurance of appropriate confidentiality protection which was not secured.

The letter was also offered in writing in the final appeal document Plaintiff submitted. Additionally, Plaintiff verbally petitioned the appeal board for confidential means to provide the letter to no avail.

## V. STATEMENT OF THE ISSUES

20. Defendant suspended Plaintiff without notice after Defendant attempted to mandate Plaintiff undergo mental health treatment and release records of said treatment to a third party, JLAP (Judges and Lawyers Advocacy Program). Defendant violated Title II of the American's with Disabilities Act, 42. U.S.C.A. §§ 12132 et. seq. and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

21. Plaintiff now faces catastrophic financial and reputational consequences due to the collateral effects of Defendant's actions. Not only is Plaintiff required to return the thousands of dollars in financial aid granted in the fall 2021 semester, Defendant's action if not enjoined may impede Plaintiff's ability to access the financial aid necessary to complete the program at any point in the future. Plaintiff's academic transcript reflects permanent withdrawal from fall 2021 courses. The reputational harms to an aspiring attorney from Defendant's actions need not be articulated to this Court. Defendant needs only fourteen credit hours to qualify for graduation.

**Review of Misconduct Allegations**

22. Defendant charged Plaintiff with violation of three codes of conduct. Plaintiff takes each and discusses them in turn below for the purpose of enabling the Court's decision on the requested motion.

**Misconduct Charge 1, Code F38: Failing to comply with orders or directives of University officials, University hearing bodies, University Police or any other law enforcement officers acting in the performance of their duties.**

23. Though not articulated in any of Defendant's judicial outcome communication documents, Plaintiff understands this allegation rests upon Plaintiff's refusal to submit to the mental health treatment and release of medical records to JLAP as Defendant ordered. Thus, as the conduct code reads, Plaintiff admits violation. However, Defendant's orders and directives constitute a prima facie violation of Title II of the ADA (*see Plaintiff's motion for prelim. injunction*).

24. Plaintiff repeatedly sought means to comply with Defendant's orders that did not violate the fundamental right to privacy and expose Plaintiff to ongoing risk of privacy breach in perpetuity due to Defendant's absent medical privacy standards.

**Misconduct Charge 2, Code F31: Harboring or bringing a pet on University premises in violation of University policy.**

25. Plaintiff admits bringing Plaintiff's dog onto university premises but denies doing so in violation of university policy. The conduct code is not a strict liability statute, thus intent must be established before culpability may be assigned. Defendant's judicial outcome documentation fails to establish any evidentiary basis or offer any finding of fact to support its conclusion that Plaintiff is culpable. This is a plain violation of due process.

26. Moreover, Defendant's own policies do not permit temporary or permanent suspension for violation of this conduct code, adding to the violation of due process.

27. Plaintiff ceased bringing Plaintiff's dog onto Defendant's premises once it was clear that doing so was impermissible. Prior, Plaintiff obtained email communication

indicating one professor had no problem with Plaintiff's dog's presence in class. On another occasion Plaintiff's dog was present without awareness by anyone. Plaintiff concedes the presence of a dog in law school is less than ideal, as is the severe and pervasive harassment Plaintiff experienced which served as the basis for the need to have the dog on Defendant's premises.

28. Though this misconduct charge is not dispositive to the present motion, Plaintiff shares the details to avoid any appearance of cherry-picking facts in a light favorable to the present motion before the Court.

**Misconduct Charge 3, Code F11. Disorderly conduct including, but not limited to the following: engages in fighting or in violent, threatening behavior, makes unreasonable or excessive noise, uses abusive or obscene language or makes obscene gestures, disturbs or disrupts any assembly, classroom or meeting of persons, obstructs vehicular or pedestrian traffic, or creates a hazardous or physically offensive condition.**

29. Again here, though not articulated in any of Defendant's judicial outcome documents, Plaintiff understands this charge rests solely on an unsubstantiated report of dog feces found in the law school building. To be clear, there are no photos of dog feces in the law school building, nor are there any photos or testimonial statements that Plaintiff's dog was observed defecating in the law school building.

30. Defendant's student conduct manual states the preponderance standard of evidence is used to adjudicate misconduct charges. Under this standard Defendant must find with a 50.01% or more degree of certainty, that Appellant's dog left feces in the law school building on the two dates in question. Defendant bears the burden of proof.

31. Defendant offers no proof to support its finding that it was Plaintiff's dog that left feces in the law school building. More to the point, Defendant offers no proof that dog feces was ever actually present in the building.

32. Plaintiff understands alleged violation of F11 relates to reports of dog feces found in the law school on Sept. 25 and Sept. 28.

33. On Sept. 25, Plaintiff recalls walking the dog on University grounds before departing campus around 8:30am for the remainder of the day. On Sept. 27 - 28, Appellant's dog resided at the Hyatt Place hotel in Fayetteville, AR.

## VI. ARGUMENT

34. A preliminary injunction is appropriate when the movant demonstrates: (1) the likelihood the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of the threat of irreparable harm to the movant and the threat of injury granting the injunction will inflict on Defendant tips in favor of the movant; and, (4) issuance of the injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*).

35. In *Planned Parenthood v. Rounds*, the Eight Circuit undertook an extensive analysis of the Dataphase factors for the purpose of distinguishing whether "a substantial likelihood of success" is substantively different than a "substantial probability of success" and if so, when one or the other applies. *See Planned Parenthood v. Rounds,* 530 F.3d 724 (8th Cir. 2008). To avoid confusion on this matter, Plaintiff takes up this issue here.

36. The Eighth Circuit requires a a more rigorous standard for a preliminary injunction of the implementation of statutes than just a "fair chance" to succeed on the

merits. *Id.*. When a movant seeks to preliminarily enjoin the implementation of a state statute, the test requires showing a likelihood of success on the merits. *Id.*. When a movant seeks to preliminarily enjoin administrative actions by state or local government agencies, the Court should examine the circumstances surrounding the government action to determine to what extent the challenged action represents "the full play of the democratic process" and thus deserves the deference of the traditional test. *Rounds,* 530 F.3d 724 (8th Cir. 2008), citing *Able v. United States*, 44 F.3d at 131-32 (2nd Cir. 1995) (per curiam) (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2nd Cir. 1989).

37. Plaintiff argues that under either the fair-chance or likelihood standards, the facts support issuing the preliminary injunction.

**Likelihood of Success on the Merits**

38. Plaintiff's suit against Defendant is, in relevant part, a prima facie case of violation of the American's with Disabilities Act's prohibition against screening individuals for disabilities. To state a prima facie claim under the ADA, a plaintiff must show: 1) she is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131 *et seq.; and Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

39. Defendant regarded Plaintiff as having a disability. *See Bragdon v. Abbot*, 524 U.S. 624 (1998), (*defining that a person is disabled if she (a) has "a physical or mental impairment that substantially limits one or more major life activities," (b) has "a record of such an impairment," or (c) is "regarded as having such an impairment"*). Plaintiff is otherwise

11

qualified to be enrolled in law school because it is undisputed that Plaintiff was enrolled and in good academic standing when Defendant issued its suspension. Plaintiff was excluded from law school because of the perceived disability because but for Defendant's stated concern about Plaintiff's 'character and fitness' there would not have been a mandate for medical treatment or for release of Plaintiff's medical records. Defendant's claim that Plaintiff's pet dog left feces in the law school building or that there was ever dog feces in the law school building is completely unsubstantiated. Thus all the elements for a prima facie claim are met.

40. Defendant labeled Plaintiff as having a disability then denied Plaintiff's access to its services because of the perception of a disability in direct contravention of Title II of the ADA. *A.D.A. Title II, Subpart B, § 35.130(b)(8)*. Defendant asserts no finding or perception of a direct threat presented by Plaintiff. And absent a finding of direct threat that is properly evaluated, a public entity may not exclude, deny, or condition provision of its services to Plaintiff on the basis of a perceived or real disability. *28 C.F.R. § 35.139(a), and Bragdon v. Abbot*, 524 U.S. 624 (1998).

41. When reviewing the likely-to-prevail element, courts evaluate whether the full play of the democratic process was involved in the actions of government agencies. *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs.*, 826 F.3d 1030, 1040 (8th Cir. 2006) quoting *Rounds*, 530 F.3d at 732 n.6). The full play of the democratic process is necessarily foreclosed when intentional discrimination occurs. And the facts in Plaintiff's case show intentional discrimination, the standard of which is deliberate indifference. *Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011)*. The deliberate indifference standard does not require evidence of personal ill will toward the disabled person. *Id.*. Rather it can be inferred from Defendant's deliberate indifference to the strong likelihood that pursuit of its questioned

policies will likely result in a violation of federally protected rights. *Id.*. There can hardly be an argument made that the state of Arkansas contains a more qualified, informed, or expert group of individuals on matters of any federal law than the professors and deans of its flagship university's law school.  That the law school's dean of student success did not know that pursuit of mandatory mental health treatment for Plaintiff is a violation of federally protected rights is simply not a plausible position.

42. Plaintiff's claim contains direct evidence of retaliation. The relevant section of the ADA states: "[n]o private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part." *28 C.F.R. § 35.134(a)*. Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct. *Lors v. Dean*, 746 F.3d 857, 865-66 (8th Cir. 2014).  When Plaintiff opposed Defendant's mandate that she undergo involuntary mental health treatment, Plaintiff met the element of "oppos[ing] an act or practice made unlawful" by the ADA. *28 C.F.R. § 35.134(a)*. The temporal proximity of Defendant's suspension of Plaintiff followed Plaintiff's refusal to undergo the mandated mental health treatment and her refusal to release medical records to JLAP.  These facts meet the required direct evidence elements.

43. The ADA also prohibits coercion and intimidation.

> "No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having gained or encouraged any

13

>other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part." *28 C.F.R. § 35.134(b)*.

44. Defendant repeatedly coerced and threatened Plaintiff in its efforts to force Plaintiff's compliance with involuntary mental health treatment. *See Ex. 35*.

45. Even were Defendant to articulate a direct threat to which it rightfully believed it was responding, Defendant's conduct fails under the ADA. A public entity is not required to provide services to an individual who poses a direct threat; a direct threat exists when an individual poses a direct threat to the health or safety of others. *28 CFR § 35.139(a)*. To determine whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment and ascertain the nature duration, and severity of the risk, the probability the potential injury will actually occur, and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk. *28 CFR § 35.139(b)*.

46. Defendant identified no direct threat to the health or safety of others. Defendant refused Plaintiff's requests for modifications, supports, investigations, and assistance.

47. For all of these reasons, Plaintiff is likely to succeed on the merits of the claim.

**Threat of Irreparable Harm**

48. Likelihood of irreparable harm requires evidence of more than a possibility and must be demonstrated as being unremedied by compensation or other form of relief after a hearing on the merits. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C. Cir. 1958). The risk or actual harm must be something definite. Some examples of irreparable harm include injury to reputation or goodwill, and deprivation of federally protected rights.

49.     When Defendant admitted Plaintiff to its law school it established Plaintiff's constitutional property interest in that education. *See Smith v. Denton*, 320 Ark. 253, 261 (1995) *("[t]o deprive a student of her educational property interest on narrowly formal grounds as exemplified in these circumstances is to violate the spirit of procedural due process")*. Disciplinary action that results in student suspension constitutes a deprivation of liberty and property interests because the allegations and suspension will damage the student's reputational standing, and future associational, higher education, and employment opportunities. *Goss v. Lopez*, 419 U.S. 565, 574 (1975).

50.     Arbitrary unlawful deprivation of liberty is an irreparable harm. The standard for evaluating whether Defendant unlawfully infringed Plaintiff's liberty and property interest is the Due Process Clause. When Defendant sought to exercise its discretion in the management of student conduct and terminate Plaintiff's access to education, it had a duty to provide: (1) adequate notice of the charges; (2) a neutral decision maker; (3) a chance for Plaintiff to confront the witnesses and evidence used against her; (4) a decision based on the record with a statement of reasons for the decision; (5) consideration of the value of additional or substitute safeguards and the risk of erroneous deprivation; and, (6) use of the the least restrictive means to achieve its interest. *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Jegley v. Picado*, 349 Ark. 600, 631–32, (2002), (*finding that government action that infringes upon a fundamental right must be implemented in the least restrictive method to achieve its interest*). Absent exigent circumstances, Plaintiff is entitled to notice and a hearing prior to the issue of an order that constitutes an infringement of liberty or property. *See Connecticut v. Doehr*, 501 U.S. 1 (1991), (*finding no governmental or societal justification for the taking of individual property prior to receipt of a hearing*).

The irreparable harm suffered by individuals excluded from government services because of disability, real or perceived, is profound. Prevention of this harm is precisely what Congress had in mind when it enacted the ADA and its subsequent amendments. "Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *42 U.S.C. § 12101(a)(2)*.

51. The irreparable harm of time lost, earning potential denied, and catastrophic financial implications are not illusive and need no elaboration. Plaintiff cannot get back the fall semester of 2021 or the spring semester of 2022. Nothing erases the humiliation of being escorted into and out of the law school building by an armed, uniformed police officer in the presence of Plaintiff's law school colleagues following the order of suspension. And nothing erases the shame of informing Plaintiff's family that no longer is being a law school student an available status. Issuing the preliminary injunction can, however, begin to restore Plaintiff's rightful status.

**Balance of Equities**

52. "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). The critical issue is whether the balance of equities so favors the movant that justice requires the court to intervene. *Dataphase Sys., Inc. v. C.L. Sys, Inc.*, 640 F.2d109 (8th Cir. 1981). The public consequence of granting the requested preliminary injunction is a signal that a student's report of harassment must not be used as a mechanism to suggest mental instability.

53.     The preliminary injunction imposes no material risk or burden on Defendant.  Any concerns Defendant may have could be alleviated by this Court's order for Plaintiff to complete the remaining credit hours remotely (online).  On the other hand, the harm to Plaintiff if Defendant is permitted to continue to deny Plaintiff's access to education is profound and unjust.

54.     Defendant may argue that a preliminary injunction undercuts its disciplinary authority to operate its institution of higher education as it sees fit.  Plaintiff understands this concern and does not disagree that Defendant must be afforded proper authority to effectively manage disciplinary matters.  Learning benefits from rule and order and society benefits from the equitable enforcement of both.  But Defendant may not manage disciplinary matters in any way and at any time that it may see fit.  And in Plaintiff's case, Defendant plainly abused its discretion and violated federal law.  Thus the public consequences of the preliminary injunction weigh in favor of issuing it.  The public needs assurance that government agencies are held to account for their actions, especially when their actions marginalize vulnerable students.

55.     Defendant may have a liability concern in being unable to explain or prevent the harassment Plaintiff reported.  This concern is not a basis to suspend a student or label a student with a disability.  Defendant is of ample means to find reasonable, nondiscriminatory means to address any liability concerns it may have.

56.     Defendant certainly has a valid concern in the well-being of its students.  But a valid concern for the well-being of a student is not a justification for conditioning access to education on the basis of involuntary mental health treatment.  Were the Court to issue the requested injunction, Defendant faces no material risk of harm because Plaintiff's enrollment requires no unique practices for Defendant nor does Plaintiff present a direct threat.

57.     The balance tips in overwhelming favor of issuing the injunction. Doing so protects Plaintiff's federal rights, avoids of additional irreparable financial harm, and restores Plaintiff's access to education.

**Public Interest**

58.     The public interest is served by enforcement of the nation's laws and by the eradication of discriminatory animus against individuals with disabilities, real or perceived. *Phelps-Roper v. Nixon*, 545 F.3d 685, 694 (8th Cir. 2008) (*overruled on other grounds*). The public interest is served when the rights guaranteed by the United States Constitution are enforced. The Due Process Clause of the Fourteenth Amendment requires that a hearing is a real one, not a sham or pretense. *Doe v. Purdue University*, 928 F.3d 652, 661 (7th Cir. 2019). Hearings are fundamentally unfair when no attempt is made to evaluate credibility of evidence or probe intent. Plaintiff was not provided a neutral decision-maker. The same conduct officer who made the decision to suspend Plaintiff without notice later administered the hearing. At the hearing, that same hearing officer upheld her own decision and sustained the suspension. The hearing officer made the decision to suspend Plaintiff without speaking to Plaintiff, making a finding of a direct threat, or establishing facts that met the preponderance standard of evidence. Given the hearing officer's adequate credentials (she possesses a PhD from the University of Arkansas), the only probable explanation for a finding that is so disproportionate to the facts and the issue is that bias exists.

59.     School disciplinary officials are entitled to a presumption of impartiality, absent a showing of actual bias. *Doe v. Cummins*, 662 Fed. Appx. 437, 449 (6th Cir. 2016). But a decision against the substantial weight of the evidence and inconsistent with ordinary practice

on sanctions may give rise to an inference of bias. *Doe v. University of Arkansas – Fayetteville*, 974 F.3e 858 (8th Cir. 2020).

60. Simply put, the public interest factor analysis insists upon restoration of Plaintiff's access to education and status as a law student.

## VI. CONCLUSION

61. A preliminary injunction is a form of extraordinary relief issued at the sole discretion of the Court, not a right to which one is entitled. The preliminary injunction is an action meant to be used for precisely the circumstances Plaintiff presents, that is, to impede violation of federal rights, preserve Constitutional status, and prevent further injustice. Plaintiff asks the Court to issue the preliminary injunction as requested in the accompanying motion.

Respectfully submitted this 14th day of August, 2022.



J. Doe, Plaintiff pro se

Post Office Box 254
Devon, Pennsylvania 19333
(479) 372-2892
Sunshinecharlie13@yahoo.com

**Temporary Mailing Address**
**To be used for this matter:**
731 Walker Street
Centerton, Arkansas 72719
(479) 372-2892

19

Sunshinecharlie13@yahoo.com

I, J. Doe, state under penalties of perjury that I will, on this 14th day of August, 2022, email a true and correct copy of this motion to the Defendants named herein.

Though I proceed as a pro se litigant, under Sect. 7 of Administrative Order 21, I understand registered users of the electronic system may receive service of documents electronically.

Donald Bobbitt – dbobbitt@uark.edu

Joe Cordi – joecordi@uark.edu

Respectfully submitted this 14th day of August, 2022.



Joan Doe, Plaintiff pro se

Post Office Box 254
Devon, Pennsylvania 19333
479-372-2892
Sunshinecharlie13@yahoo.com

**Temporary Mailing Address
To be used for this matter:**
731 Walker Street
Centerton, AR 72719

20