IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF ARKANSAS

FAYETTEVILLE DIVISION

Joan DOE
Plaintiff,                                    )
                                              )
v.                                            )                Civil Case No. 22-5137
                                              )
                                              )

BOARD OF TRUSTEES FOR
THE UNIVERSITY OF ARKANSAS,
UNIVERSITY OF ARKANSAS
PRESIDENT AND CEO
DONALD BOBBITT, AND THE
UNIVERSITY OF ARKANSAS
SCHOOL OF LAW,
Defendants

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND TO
DENY PLAINTIFF'S MOTION FOR TRO AND PRELIMINARY INJUNCTION**

      1.      Defendant filed a motion to dismiss Plaintiff's complaint both in segments and

its entirety citing various legal precedents.  Plaintiff responds here in opposition and asks the

Court to deny Defendant's motion.

**II. LEGAL STANDARD**

      2.      A civil complaint must suggest a right to relief beyond labels and conclusions

that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550-70 (2007).  This

requirement does not create a probability standard at the pleading stage.  *Id.*.  Plaintiffs need only

provide enough facts to raise a reasonable expectation that discovery will provide evidence of the

claimed violation.  *Id.*.  Review of a motion to dismiss requires a court to accept as true Plaintiff's allegations in the complaint, construe the pleading in the light most favorable to the nonmoving party, and resolve all doubts in complainant's favor.  *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1033 (8th Cir. 2021).

3.      When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), failure to state a claim for which relief may be granted, a court accepts the allegations contained in the complaint as true and reasonable inferences from the complaint are drawn in favor of the nonmoving party.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Naked assertions devoid of supporting facts do not suffice the pleading standard.  *Id.*.  The pleading standard is satisfied when the complaint's factual content allows inference that the defendant is liable for the misconduct alleged.  *Id.*.  Pleadings that are no more than conclusions are not entitled to the assumption of truth. Id. at 679.

4.      When ruling on a motion to dismiss under a sovereign immunity argument the Court evaluates the text of the statute referenced in the pleading to determine whether Congress meant to abrogate the immunity provided by the Eleventh Amendment.

### III. ARGUMENT

5.      Plaintiff asks the Court deny Defendant's motion to dismiss and grant Plaintiff's motion for injunctive relieve and temporary restraining order.  Here, Plaintiff rebuts each of Defendant's arguments.

**Request for a preliminary injunction should be denied under *Dataphase*.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)**

6.     Defendant argues that Plaintiff is unlikely to succeed on the merits of the claims and argues in opposition under the rest of the *Dataphase* factors.  Plaintiff incorporates here all facts presented in the initial complaint and the motion for preliminary injunction and temporary restraining order.  (Doc. 2 and Doc. 9).

7.     Plaintiff presents the Court a <u>fourth</u> letter of medical and professional recommendation from a <u>second</u> professional that supports Plaintiff's claim of a likelihood to succeed on the merits and the threat (and reality) of irreparable harm to Plaintiff if the injunction is not granted.  **Ex. 30**.  The fourth letter's statements affirm the veracity of Plaintiff's claims and unequivocally proclaim Plaintiff's ability to succeed in a law school environment.  Because the contents of the letter speak for themselves, Plaintiff will not elaborate further.

8.     Plaintiff offers the Court two new arguments in support of the irreparable harm incurred if the suspension and its re-enrollment requirements are upheld.  First, Plaintiff's student loan payments may no longer be deferred and payment is due this month.  Plaintiff is unable to enjoy the employment benefits of her legal education due to the stain of the suspension on her reputation.  Second, Defendant offers one of the classes required for graduation in only the fall and summer semesters – the Upper Level Writing requirement.  It was this requirement that caused Plaintiff to return to Fayetteville in the Fall of 2021.  Plaintiff sought permission to complete the requirement as a visiting student at any one of the law schools in the Philadelphia area where she resided at the time.  Plaintiff also sought to complete the requirement via an independent study program, an option that Plaintiff's Health Policy and Health Law professor, Dr. Frank Griffin, said he had availed himself of in the Summer of 2018.

Plaintiff's requests were denied.  Plaintiff is only permitted five academic years to complete the three year program.  Then, if Plaintiff is unable to take the Upper Level Writing class this fall, graduation becomes an impossibility without intervention from this Court.

9.     Plaintiff humbly reminds the Court that the complaint in this suit was filed on July 13.  Plaintiff's poverty status is the reason the service of process took the extended time that it did—the Marshal's executed service on August 16, 2022.  Please do not allow Plaintiff to suffer further and additional harms due to circumstances that Defendant's conduct rendered completely out of her control.

**A TRO is not a proper remedy because Defendants have notice.**

10.     Defendant argues that the absence of notice is a prerequisite to the grant of a TRO.  This argument is false.  The text of the Federal Rule that governs temporary restraining orders is as follows: "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . .." *Fed. R. Civ. P. 65(b)(1)*.

11.     The verb 'may' is defined as 'expressing possibility' and 'expressing permission.' See *Definitions from Oxford Languages*.  The federal rule contains no language to suggest that notice to the nonmoving party negates the option for a TRO.  *Fed. R. Civ. P. 65(b)(1)*.  The rule's text plainly sets forth the minimum requirements for grant of a TRO when notice is lacking.  *Id.*.  There is no exclusionary language that prevents the Court from granting a TRO post-notice to the nonmoving party when doing so preserves the constitutionally protected status and rights of the moving party.

12.     Plaintiff asks the court grant the TRO to allow immediate re-enrollment and restoration of Plaintiff's financial aid status.  Plaintiff deserves to be in law school and continued delay only deepens the already egregious harms.

**Failed to state a claim against the University of Arkansas School of Law because it is not a party capable of being sued.**

13.     Defendant asked the court to dismiss the complaint against The University of Arkansas School of Law because it lacks the capacity to be sued.  Under Section 504 of the Rehabilitation Act a college or university waives sovereign immunity in a suit alleging discriminatory intent upon acceptance of federal funds.  **29 U.S.C. § 794; 42 U.S.C. § 2000d-7**; see also, *Tennessee v. Lane*, 541 U.S. 509 (2004) (Congress lawfully abrogated state sovereign immunity for denial to courtroom access because it is a fundamental right); and see *Assoc. for Disabled Americans v. Florida Intl. Univ.*, 405 F.3d 954 (11th Cir. 2005) (finding that *Lane's* holding should extend to claims regarding higher education).

14.     Thus, when the University of Arkansas School of Law accepted federal funds it subjected itself to suit under section 504 of the Rehabilitation Act which is incorporated into Title II of the ADA.  ***29 U.S.C. § 794; 42 U.S.C. § 2000d-7;  42 U.S.C. § 12133 links to the Civil Rights Act of 1964 and § 794(a)(b) of Title 29 and provides a private right of action to any person aggrieved by any act or failure to act by any recipient of federal assistance or federal provider of such assistance***.

15.      Here, Plaintiff will establish that Defendant's law school is a recipient of federal funds.  Defendant's 2021 financial report defines the School of Law as a primary government of the University of Arkansas.  (**Ex. 22, 2021 Annual Report for the University of Arkansas, p. 37**).  The report defines a 'financial reporting entity' as "the primary government, organizations

for which the primary government is financially accountable and other organizations for which the nature and significance of their relationship with the primary government are such that exclusion could cause the financial statements to be misleading or incomplete." *Id.*.  The report's financial statements state that in fiscal year ended on June 30, 2021, Defendant's federal revenue was $461,564,741 compared to $136,509,080 in state and local revenue.  Nearly two-thirds of Defendant's annual revenue comes from the federal government.  Since the law school is a 'primary government' and a 'financial reporting entity,' of the University of Arkansas and its exclusion from the master financial reports "could cause the financial statements to be misleading or incomplete," Plaintiff is comfortable inferring that the annual report establishes the law school as a recipient of at least part of the four-hundred million dollars in federal funding received by Defendant, and thus subject to suit under section 504 of the Rehabilitation Act.. *Id.*. Plaintiff asks the Court infer the same.

### Failed to state a claim under 42 U.S.C. § 2000d.

16.     Defendant argued that Plaintiff failed to state a claim under 42 U.S.C. § 2000d.  A claim is sufficiently stated when facts presented allow the Court to reasonably infer liability for the misconduct alleged.  The text of Section 504 of the Rehabilitation Act is codified in 29 U.S.C. 794 and states that the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."[1] *Section 504 of the Rehabilitation Act of 1973*.

---

[1] Dol.gov (last visited on Sept. 7, 2022).

17.     The Department of Education regulates and implements Section 504 of the Rehabilitation Act relative to institutions providing postsecondary education.  Whereas the Department of Justice provides the same interpretation and management relative to Title II of the ADA.  Title 42 U.S.C. § 2000d provides the remedies, procedures and rights of Title VI of the Civil Rights Act that are incorporated to The Rehabilitation Act.

18.     Plaintiff references the incorporation of Title VI, 42 U.S.C. § 2000d in the complaint to enable use of the full breadth of remedies available.  Thus a stated compliant under Title VI,  42 § 2000d is unnecessary because in the context of Plaintiff's lawsuit the Title is a vehicle for expedient implementation of Congressional intent rather than the foundational statute allegedly violated.  Though to be sure, the spirit and intent of the Civil Rights Act of 1964 was absolutely violated by Defendants' actions but Plaintiff does not sue in this vein.

19.     The relief available under Title VI includes but is not limited to a permanent or temporary injunction ordering a recipient of federal funds to do or to stop doing something.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2010); and *see  Title VI Legal Manual, IX. Private Rights of Action and Individual Relief Through Agency Action*.  Under Title VI private individuals may obtain monetary damages for intentional discrimination.  *Id*., *and see Barnes v. Gorman*, 536 U.S. 181, 186-87 (2002) *(finding that a recipient of federal funds is subject to suit for compensatory damages which includes both pecuniary and nonpecuniary injuries)*.  More, Title VI, 42 U.S.C. 2000d does not require a plaintiff exhaust administrative remedies prior to bringing a claim.  *Id.*, *and see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009).  And, under Title VI states do not have Eleventh Amendment Immunity.  See *Seminole Tribe of Fla. V. Florida*, 517 U.S. 44, 54 n.7 (1996).

20.     It follows, then, that all of Plaintiff's claims under the ADA and Section 504 of the Rehabilitation Act are subject to the relief and remedies Title VI, 42 US.C. 2000d provides. Thus Plaintiff thought it unnecessary to delineate specific claims linked thereto.

**Sovereign immunity bars claims.**

21.     Title 28, Part 35, Section 35.178 of the Code of Federal Regulations states that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction or a violation of this Act." *28 C.F.R. 35.178.*

22.     The Rehabilitation Act provides that colleges and universities waive the defense of sovereign immunity upon acceptance of federal funds.  *Id.*.  Section 504 of the Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability from exclusion of participation in,  or denial of benefit from, any program or activity that receives federal financial assistance.  Under the Rehabilitation Act a program or activity is all the operations of a department, agency, special purpose district or other instrumentality of the state or local government.

23.     Plaintiff's complaint contains sufficient factual matter to allow inference that Defendant is liable for the misconduct alleged and Defendant cannot claim sovereign immunity as a protection against violations of federal law.

**Failed to state a disability discrimination claim under either the ADA or the Rehabilitation Act.**

24.     Defendant argues that Plaintiff failed to allege sufficient factual matter to allow inference that it is liable for discrimination against Plaintiff under either the ADA or the Rehabilitation Act.  But Plaintiff's complaint contains sufficient factual matter to support these claims.  Plaintiff incorporates all facts plead in the initial complaint and in the motion for injunctive relief and TRO.  (**Docs. 2 and 9**).

25.     Plaintiff asks that the right to present additional evidence on this claim be reserved.  While Plaintiff understands litigation is an unfriendly endeavor, Plaintiff wishes to execute her case with the virtue the profession and its practitioners deserve.  To this end, Plaintiff wishes, if possible, to avoid admission of certain emails and other evidence which will tend to show the Defendant and/or its agents acted in a manner that deviates so substantially from accepted professional judgment, practice, or standards as to demonstrate the defendant acted with wrongful intent.  See *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013).  These agents are Plaintiff's former and to-be colleagues and professors.

26.     Plaintiff asks the Court to deny Defendant's motion.

**Failed to state a retaliation claim.**

27.     Defendant argued that Plaintiff failed to allege sufficient factual matter to allow inference that it is liable for retaliation under the relevant section of the ADA.  Defendant asked the Court to engage its argument that its conduct should be considered in the employment-law context.  Plaintiff asks the Court for a clear statement on this issue.  In the interim, Plaintiff argues that employment between the law school and Plaintiff was not established and cannot be reasonably inferred.  Arkansas Arkansas Model Jury Instruction 701 states that: "[a]n employee is a person who, by agreement with another called the employer, acts for the employer and is

subject to her control.  The agreement may be oral or written or implied from the conduct of the

parties and may be with or without compensation." *AMI 701*.  Plaintiff did not act for

Defendant.  Plaintiff did not call the Defendant her employer.  Even were Plaintiff deemed

Defendant's employee, Defendant violated the ADA.  Under the ADA, employers may only

conduct a post-offer disability related inquiry if the inquiry is imposed on all employees in the

same job category. *42 U.S.C. § 12111, 12112(d)(4)(A)(B), and (C); 29 C.F.R. Part 1630, 1614.*

Nonetheless, this matter is not dispositive for the present motion.

28.     Plaintiff's retaliation claim under the ADA included facts sufficient to allow the

Court to infer Defendant's liability for the misconduct alleged.  Plaintiff incorporates the

elements of an ADA retaliation claim as stated in Plaintiff's complaint (**Doc. 2**).  In *Lors v.*

*Dean*, the Eighth Circuit set forth the requirements for direct evidence of retaliation and the

requirements to withstand summary judgment on an ADA retaliation claim.  *Id.*, 746 F.3d 857,

864-65, 867-68 (8th Cir. 2014).  *Lors* was an ADA employment discrimination case but the

doctrine established is applicable here.  Direct evidence of retaliation is evidence that shows a

clear link between adverse action and protected conduct, supported by reasonable facts that

suggest the adverse action was motivated by the protected conduct.  *Id.*.  To succeed against a

motion for summary judgment the plaintiff must show a material issue regarding pretext by (1)

indirect evidence showing that the proffered explanation is unworthy of credence because it has

no basis in fact, or (2) persuade the court that an unlawful reason likely motivated defendant (this

is dependent upon showing evidence of intentional retaliation).  *Id.*.

29.     The factual matter Plaintiff plead includes a report of harassment experienced on

campus and law school grounds followed by Defendant labeling Plaintiff with questionable

character and fitness and demands that Plaintiff undergo involuntary mental health treatment

with Plaintiff's access to education conditioned thereupon.  This is direct evidence of retaliation.

The suspension document Plaintiff received contains allegations that Plaintiff's dog damaged

property and it is this allegation that, per University officials' statement(s), caused the interim

suspension.  This is evidence of a pretext because Defendant's code of conduct contains strict

guidelines for the imposition of a nonacademic interim suspension.  Those guidelines require

finding a threat to the safety of the student, the university population, and/or the university

property.  Defendant's code of conduct also imposes the preponderance standard as the

evidentiary burden that must be met before a finding of fault may be applied.  The allegations

that Plaintiff's dogs' feces was found in the law school building does not give rise to a finding of

a threat of safety to University property or population.  And since there is no evidence

whatsoever that feces ever existed in the law school building or that it was Plaintiff's dog's feces

allegedly found, the preponderance standard clearly remains unmet.

   30. Taken together these facts are sufficient to allow inference that Defendant is liable

for the retaliation conduct complained of in Plaintiff's pleading.

   **Failed to state a coercion claim.**

   31. Defendant stated that Plaintiff failed to plead facts sufficient to allow inference

that it is liable for unlawfully coercing Plaintiff.  The relevant section of the ADA states: "[n]o

private or public entity shall discriminate against any individual because that individual has

opposed any act or practice made unlawful by this part, or because that individual made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

the Act or this part." *28 C.F.R. § 35.134.*

32.     But for Plaintiff's report of harassment experienced on Defendant's property there is no indication that her character and fitness would be in question.  When Plaintiff opposed Defendant's demands for involuntary mental health treatment as a condition to continued access to education, Defendant escalated the demands from participating in a meeting, to discussing counseling with JLAP, then to restricting Plaintiff's speech, demanding Plaintiff undergo a psychiatric evaluation, demanding a release of medical records to JLAP, and finally demanding that Plaintiff sign a release giving JLAP permission to share Plaintiff's medical records with the law school.  These facts are supported in Plaintiff's Ex. 10.  (**See Doc. 2 and 9**.)

33.     Thus Plaintiff plead sufficient factual matter to allow inference that Defendant is liable for the alleged misconduct.

### Failed to state a FERPA claim.

34.     Defendant argues Count II of Plaintiff's complaint should be dismissed for failure to state a claim because there is no private right of action under FERPA.  Plaintiff stipulates the lack of a private right of action in the FERPA statute.  And Plaintiff stipulates that a court may not create a remedy in a federal statute where Congress clearly did not intend one to exist.    But these are not reasons to dismiss the FERPA claim.

35.     Plaintiff incorporates here paragraphs 54-65 contained in the initial complaint. **(Doc 2)**.  Despite the lack of a private right of action contained in the FERPA statute, Plaintiff's claim should be permitted for the following reasons.  First, unconstitutional and unlawful practices should not go unaddressed due to Plaintiff's inexperience in complaint drafting. Second, the Court has the authority, no the duty, to intervene and prevent unconstitutional harms where the law provides no useful remedy. *Ex Parte Young*, 209 U.S. 123 (1908) and *McCulloch*

*v. Maryland*, 17 U.S. 316 (1819).  Finally, federal courts have jurisdiction and authority to review state conduct under federal laws and provide an interpretation and application of those laws that produce a uniform application throughout the country.  *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816).  Defendant's conduct relative to the FERPA claim offends not only Plaintiff's rights but the rights of innumerable students across the nation who likely find themselves without recourse.  The Court has an opportunity to uphold the spirit and intent of the FERPA statue and in so doing affirm the privacy rights of students everywhere.

36.     Defendant, a government entity, defied the letter and spirit the FERPA statute by leveraging its extreme imbalance of power in violation of the fundamental right to privacy.  More concerning is the conspiratorial way in which Defendant executed its demand.  By demanding that Plaintiff release her medical records to JLAP and then demanding that Plaintiff provide release allowing JLAP to share Plaintiff's records with the law school, Defendant sought to circumvent the text and legislative intent of the FERPA statue.  If the Court tolerates this abuse of power, it signals to Defendant that it will be rewarded for its efforts to engage third parties for the purpose of circumventing federal law at the expense of its students' privacy rights.

37.     FERPA functions as an incentive for colleges and universities to conduct their affairs in a manner that protects student privacy.  Where universities breach the provisions of FERPA, the federal government will withhold funding.  Before breaches are punished, the federal government must accept a student's report of a breach, conduct an investigation, and conclude misconduct.  And for the federal government to conduct an investigation of Defendant's conduct beyond the specifics of Plaintiff's individual case, Plaintiff must plead facts that can only be obtained during a discovery phase.  The system in place to punish the abuses of authority and power FERPA sought to prevent is both inefficient and ineffective.  Breaches of

privacy are unrecoverable and particularly injurious to students who are at the start of their professional career.

38.     The long standing principle that Courts should not rule on open constitutional or federal statutory questions is not in play here.  Plaintiff does not ask the Court to rule on an open question.   The matter of the fundamental right to privacy is beyond settled.

39.     Law students are entitled to the full rights and protections guaranteed in federal and state laws, and in the Constitution.  The right to privacy is a fundamental right guaranteed by the federal Constitution.  *See U.S. CONST. Amend. XIV, § 1.*  Government action that infringes upon a fundamental right must be implemented in the least restrictive method to achieve its interest.  *Jegley v. Picado*, 349 Ark. 600, 631–32, (2002).  When a fundamental right is infringed by the government, Arkansas common law requires weighing the individual's right to privacy against the government's purpose.  See *Young v. Rice*, 308 Ark. 593 (1992).

**Sovereign immunity bars the § 1983 claims against the Board of Trustees and Dr. Bobbitt.**

40.     Defendant argued that sovereign immunity bars the § 1983 claims against the Board of Trustees and the claims for monetary relief under § 1983 against Dr. Bobbitt.  Plaintiff reserves the right to motion the Court as needed for leave to amend the complaint to incorporate additional claims including but not limited to § 1983 and § 1981 claims.

**Failed to state a substantive due process claim.**

41.     Defendant argued that Plaintiff failed to state a substantive due process claim.  A substantive due process claim is sufficiently plead when the factual matter presented allows

14

inference that Defendant failed to function according to the bounds of law and that there is no offsetting justification for Defendant's break from legal norms.

42.    Defendant deprived Plaintiff of her constitutionally protected property interest in continued enrollment of the law school program.  *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 222-23, (1985).  A constitutionally protected right gives "rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action." *Id.*.

43.    Defendant points to Plaintiff's lack of argument that its conduct shocks the conscience.  Is it not implicit?  Defendant met a student's report of harassment and plea for support and assistance with a mandate that she submit her body to a psychiatric examination and share those results with third party so that said third party may share the results back to Defendant — an act done for the sole purpose of circumventing the FERPA statute and the fiscal punishments imposed on its violators.  Defendant then couched its suspension of Plaintiff in a formal presentation that rested on an unsubstantiated claim that Plaintiff's suspension was really about her canine's feces left in the law school building.

44.    At the time of the suspension Plaintiff had perfect class attendance and had only one late assignment submission — an ungraded assignment that Plaintiff submitted a few hours late.  The argument that Defendant suspended Plaintiff due to a concern with Plaintiff's ability to meet the demands of law school is a pretextual façade.  When faced with a report that a student experienced harassment on its grounds, Defendant sought to protect itself from liability and chose to interrupt Plaintiff's education in an attempt to do so.

45.    Defendant had no sufficient justification for its conduct at the time of the suspension.  Thus Plaintiff plead sufficient factual matter to support the claim that Defendant

violated the substantive due process requirement and to support an injunction under Title VI prohibiting Defendant's imposition of re-enrollment requirements.

### Failed to state a procedural due process claim.

46.     Defendant argued that Plaintiff failed to state a procedural due process claim, and that the claim concerning the interim suspension is moot.  A procedural due process claim is sufficiently plead when the factual matter presented allows inference that Defendant failed to provide adequate procedure before depriving Plaintiff of a protected interest or right.

47.     Plaintiff's complaint (Doc. 2) contains sufficient factual matter to support the allegation that Defendant failed to provide adequate notice prior to depriving Plaintiff of the constitutionally protected interest in her education and in her constitutionally protected right to bodily integrity.  Plaintiff plead ample factual matter to establish a due process violation.  **See Doc. 2, ¶ 66-89**.  The claim concerning the interim suspension is not moot; even if it were, it is a matter capable of repetition yet evading review.  First, the ADA contains no statute of limitation for the private right of action.  The other federal statutes Plaintiff's complaint alleges violation of are linked to the ADA, that is, the ADA sits atop them and it is the ADA's terms that govern. Second, Plaintiff asks the Court for a Declaratory Judgement under Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, a federal statute that also contains no statute of limitation.  The text of 28 U.S.C.A. §§ 2201 states that any court of the United States may declare the rights of an interested party seeking such a declaration and that declaration shall have the force and effect of a final judgment or decree despite the availability of further relief therefrom.  **28 U.S.C.A. §§ 2201, Creation of Remedy** (paraphrased).  The text of 28 U.S.C.A. §§ 2202 states that the court may grant further relief based on a declaratory judgment after reasonable notice and hearing, against any adverse party whose right have been determined by such judgment.  28 U.S.C.A. §§

2202, Further Relief (paraphrased). The requirement for a hearing stated in 28 U.S.C.A. §§ 2202 may be offset by *Ark. and Fed. R. of Civ. P.* 65(a), 28 U.S.C. § 1657[2], and 5 U.S.C. § 705[3]. Under *Ark. and Fed. R. of Civ. P.* 65(a) the Court may issue a preliminary injunction on only notice to the nonmoving party, that is, without conducting a hearing. Under 28 U.S.C. § 1657, the Court may determine the order in which civil actions are heard and determined except that the court shall expedite any action for preliminary injunctive relief or any other action if good cause is shown. Good cause is shown if a right under the U.S. Constitution or a federal statute is maintained in a fact based context that shows the request for expedited consideration is valid. Under 5 U.S.C. § 705, the Court may "issue all necessary and appropriate process" to preserve a party's status or rights pending determination of the merits.

48. Defendant argues that Plaintiff did not avail herself of the opportunity to contest the interim suspension. But this point is misleading to this Court and it is irrelevant to Plaintiff's procedural due process claim. The test for a procedural due process claim does not put the burden on the deprived person. Plaintiff takes up the matter here to avoid a continued discussion thereof during this litigation.

49. Plaintiff was notified via email on Sept. 30, 2021 that she was suspended and unable to be on campus grounds without police escort. The four-page single spaced document contains a stated option to contact the Dean of Students and contest the Interim Suspension on page 3, "If the student chooses to contest the Interim Suspension, it is the student's responsibility to request a review meeting with the Dean of Students." **Ex. 20, p.3, ¶6**. But in that same

---

[2] " ... except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown. For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit." 28 U.S.C. § 1657.

[3] A reviewing court may issue all necessary and appropriate process to preserve the status or rights of a moving party pending conclusion of review proceedings. 5 U.S.C. § 705

paragraph and in the paragraph that follows, the notice references a "review of the terms of the Interim Suspension," and "modified Terms of the Interim Suspension." **Id. and ¶7**.

50.     First, it is unclear if the opportunity is one to challenges the interim suspension or to challenge the terms thereof.  Second, Plaintiff had no insight whatsoever into the claims made against her.  The suspension notice no claims of culpability or facts supporting the allegations of misconduct.  Thus Plaintiff had no reasonable ability to prepare for a meeting with the University's Dean of Students and contest either the suspension imposed against her or the terms thereof.

51.     The process to obtain a copy of a student file can take up to a week and begins with an emailed request sent to the student conduct office.  Plaintiff received the suspension letter on Thursday, Sept. 30, 2021 at 1:32pm.  **Ex. 21**.  Plaintiff had no way to know whether she would receive the evidence file (student conduct file) within two, three, or four days of the request.  The suspension letter requires that the meeting with Dean Harwood-Rom occur "**no later than 5pm on Monday Oct. 4, 2021**."  **Ex. 20, p.3, ¶7** (emphasis added).  Plaintiff was given less than 72 business hours to obtain a copy of her student conduct file, schedule and execute a meeting with the Dean of Students.  If we agree that it is not reasonable to expect a student to have a fair chance of success in a meeting in which she is unaware of the facts and information supporting the misconduct claims against her, then we agree that Plaintiff needed the conduct file before any meeting about the matter.  Thus any opportunity for Plaintiff to engage in a meeting with the Dean of Students and challenge the suspension or terms thereof is a pretext, at best.

52.     Plaintiff plead facts sufficient to allow this Court to infer Defendant's liability for the misconduct alleged.  And Plaintiff's pleading allows this Court to impose an injunction barring Defendant's terms for Plaintiff's re-enrollment.

**Re-enrollment and character and fitness certification in question due to Plaintiff's arrest for three misdemeanors in May 2022.**

53.     Defendant submitted declarations and other references to Plaintiff's arrest in May 2022 and to a general concern about an inability to certify Plaintiff's fitness and character.

54.     Plaintiff argues that these matters are irrelevant to the present legal question. Plaintiff's complaint challenges the legality of the suspension under federal law.  The question at hand should be answered first, before an undertaking to evaluate the arbitrariness of the re-enrollment requirements and/or the purported concerns about Defendant's inability to certify Plaintiff's character and fitness.

## IV. CONCLUSION

55.     Defendants motion to dismiss Plaintiff's complaint, in segment or entirety, should be denied.  Plaintiff's motion for TRO should be granted to allow immediate restoration of her status as a law school student.  Plaintiff's motion for injunctive relief should be granted in a manner considerate of Plaintiff's law school enrollment.

Respectfully submitted this 8th day of September, 2022.



J. Doe, Plaintiff pro se

Post Office Box 254
Devon, Pennsylvania 19333
(479) 372-2892
Sunshinecharlie13@yahoo.com

**Temporary Mailing Address**
**To be used for this matter:**
731 Walker Street
Centerton, Arkansas 72719
(479) 372-2892
Sunshinecharlie13@yahoo.com

### Certificate of Service

I, J. Doe, state under penalties of perjury that I have, on this 8th day of September, 2022, emailed a true and correct copy of this motion to the Defendants named herein.

Though I proceed as a pro se litigant, under Sect. 7 of Administrative Order 21, I understand registered users of the electronic system may receive service of documents electronically.

Donald Bobbitt – dbobbitt@uark.edu

Joe Cordi – joecordi@uark.edu

Respectfully submitted this 8th day of September, 2022.



_____

Joan Doe, Plaintiff pro se

Post Office Box 254
Devon, Pennsylvania 19333
479-372-2892
Sunshinecharlie13@yahoo.com

**Temporary Mailing Address**
**To be used for this matter:**

20

731 Walker Street
Centerton, AR 72719