UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOAN DOE                                                            PLAINTIFF

v.                                    No. 5:22-cv-05137

BOARD OF TRUSTEES FOR THE UNIVERSITY OF
ARKANSAS; DONALD BOBBITT; UNIVERSITY
OF ARKANSAS SCHOOL OF LAW                          DEFENDANTS

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 12) and memorandum in support (Doc. 13).  Plaintiff has filed a response in opposition (Doc. 18).  For the reasons stated below, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

### I.    Background

The Plaintiff, Joan Doe, alleges as follows:

Ms. Doe is a third-year law student at the University of Arkansas School of Law (hereinafter "Law School").  (Doc. 2, p. 4).  Prior to the events of this complaint, she was a student in good standing.  *Id.*

On August 30, 2021, Ms. Doe told three of her professors that she would be unprepared for the day's classes and would submit an ungraded assignment late.  (Doc. 2, p. 9).  She attributed this to harassment she experienced off-campus.  *Id.*  A few days later, she told four of her professors about the harassment and abuse she was suffering, some of which took place on campus and in the law school.  Ms. Doe also submitted written reports of the harassment directly to the Law School.  She requested an investigation into the source of the harassment and help finding a safe place to study.  *Id.*

1

The Law School e-mailed Ms. Doe on September 7 regarding her reports. (Doc. 2, pp. 10, 16). The e-mail expressed concern about the law school's ability to certify Ms. Doe's character and fitness to practice law. *Id.* at 10. This concern was said to stem from Ms. Doe's contact with her professors, inability to prepare for class, and affected academic performance, but no further details were given. *Id.* Ms. Doe was forbidden from contacting the school about her harassment unless it was through a former assistant dean. The next day, she was ordered to contact the Judges and Lawyers Advocacy Program ("JLAP"), an outside organization, to "discuss counseling options." JLAP did not recommend counseling, and Ms. Doe relayed this to the Law School on September 9. The next day, the Law School ordered Ms. Doe to contact JLAP and "arrange for a psychiatric evaluation." *Id.* at 10, 16.

The Law School also insisted that Ms. Doe release her medical information to JLAP. (Doc. 2, p. 10). While Ms. Doe offered to provide the requested information directly to the Law School, the Law School refused and insisted that the information be released to JLAP. *Id.* at 10–11. On September 27, Ms. Doe requested more time to consult with an attorney and for the Law School's justification for requesting her personal medical information. *Id.* at 11. In response, the Law School told her that her lack of cooperation meant that she was not in compliance with "the process," but did not discuss the implications of noncompliance. *Id.* On September 28, Ms. Doe requested another extension but was instructed to complete the medical release that day. On September 30, without further discussion, the Law School placed Ms. Doe on interim suspension. *Id.*

The stated grounds for Ms. Doe's suspension were that Ms. Doe "failed to comply with directives of the University of Arkansas Law School Faculty/Administrators, brought an unauthorized pet onto [sic] [University] facilities, and left pet feces inside [University] facilities."

2

(Doc. 2, p. 5).   The University's Code of Student Conduct reserves interim suspensions for circumstances where there is "reasonable cause, based on available facts, to believe that a student poses a significant risk of substantial harm to the health, safety, and welfare of others or to property or poses an ongoing threat to the disruption of . . . the normal operations of the University." *Id.* at 6.   While Ms. Doe had brought her dog to the law school, she claims that others periodically did the same. *Id.*   Further, she says that she complied when asked to remove her dog from University grounds.   Ms. Doe was not suspended until nearly a month after the dog incident. *Id.*

After being suspended, Ms. Doe requested an administrative hearing.   (Doc. 2, p. 6).   She was ultimately found responsible for all three allegations of misconduct based on the information in "her file." *Id.* at 6–7.   However, according to Ms. Doe, that file contained nothing suggesting that she posed a safety threat and no proof that dog feces was ever found in the law school building, let alone that her dog had left it. *Id.* at 7.

Ms. Doe filed this case on July 12, 2022.[1]   The named defendants are the Board of Trustees for the University of Arkansas; Donald Bobbitt, the president and CEO of the University of Arkansas; and the University of Arkansas School of Law (collectively, "Defendants").   Ms. Doe alleges violations of the Americans with Disabilities Act (ADA), the Family Educational Rights and Privacy Act (FERPA), and the Due Process Clause of the Fourteenth Amendment.   She seeks injunctive relief reinstating her as a student and clearing her record, compensatory damages, and costs and fees.   Defendants have moved to dismiss all claims.

---

[1] This is Ms. Doe's second suit on these facts.  The first was dismissed without prejudice as to the defendants named here for insufficient service of process. *Doe v. Univ. of Ark. – Fayetteville*, No. 5:21-cv-05231, 2022 WL 908501, at *6 (W.D. Ark. Mar. 28, 2022).

## II.   Legal Standard

On a motion to dismiss under Rule 12(b)(6), courts in the Eighth Circuit proceed as

follows:

> We accept the well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 . . . (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 . . . We assess plausibility considering only the complaint and materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint," *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), "draw[ing] on [our own] judicial experience and common sense," *Iqbal*, 556 U.S. at 679 . . . Further, we "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

*Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021).

## III.   Mootness

Defendants argue that Ms. Doe's claims arising from her interim suspension are moot

because the interim suspension has been replaced by a permanent one. (Doc. 13, p. 23). The Court

disagrees. *Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987), is instructive. In that case, the

Department of Labor issued a preliminary decision ordering a company to reinstate a worker. *Id.*

at 256. The company sued, challenging the procedural adequacy of the preliminary decision, but

the Department of Labor issued a final decision ordering reinstatement while the lawsuit was

pending. *Id.* at 257. The Supreme Court held that the entry of the final decision did not moot the

challenge to the preliminary decision. *Id.* While the company's obligation to reinstate the worker

now flowed from the final decision, the Court concluded that the company could "reasonably be

expected [to] be subjected . . . to similar preliminary orders in the future." *Id.* at 257–58. It

therefore determined that the controversy over the procedural adequacy of the preliminary decision

was "capable of repetition, yet evading review," and therefore not moot. *Id.* at 258. In the present case, Ms. Doe's exclusion from the Law School now stems from her permanent suspension, not the temporary one. However, Ms. Doe seeks to be readmitted. It appears from the filings that Ms. Doe and Defendants have a contentious and hostile relationship. If she is ultimately readmitted, the history of acrimony makes her more likely to earn another temporary suspension, whether due to her own actions (as Defendant urges) or Defendant's animus (as Ms. Doe claims). Therefore, the temporary suspension is capable of repetition, yet evades review, and accordingly is not moot.

## IV.   Sovereign Immunity

### a.   ADA Claims

Defendants assert that sovereign immunity bars Ms. Doe's ADA claims. (Doc. 13, p. 12). They cite *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999), for this proposition. However, intervening Supreme Court precedent makes clear that sovereign immunity under the ADA is not absolute. *United States v. Georgia*, 546 U.S. 151 (2006); *Tennessee v. Lane*, 541 U.S. 509 (2004). Rather, courts must consider "(1) which aspects of the State's alleged conduct violated Title II [of the ADA]; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. To the extent that Ms. Doe is able to state claims under the ADA, Defendants can be held liable under the ADA if their conduct also violates the Fourteenth Amendment. Defendants are also potentially liable under the *Georgia* rule in the absence of a Fourteenth Amendment violation if the Court determines that the abrogation of sovereign immunity is valid for another reason. Therefore, sovereign immunity does not necessarily shield Defendants from Ms. Doe's ADA claims. As the parties have not yet briefed

the *Georgia* analysis, the Court will defer ruling on Defendants' sovereign immunity under the ADA.

      b.  <u>§ 1983 Claims (Board)</u>

Defendants assert that the Board of Trustees has sovereign immunity from all of Ms. Doe's § 1983 claims. (Doc. 13, p. 19). The Court agrees. Generally, state agencies enjoy sovereign immunity against § 1983 suits. *See Monroe v. Ark. St. Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Arkansas law allows for suits to enjoin illegal, arbitrary, or bad-faith actions by a state agency. *Ark. St. Med. Bd. v. Byers*, 521 S.W.3d 459, 462–63 (Ark. 2017). However, a "state must specify an intent to subject itself to *federal court jurisdiction*." *Santee Sioux Tribe of Neb. v. Nebraska*, 121 F.3d 427, 431 (8th Cir. 1997) (emphasis added). Here, the fact that Arkansas can be sued in its own courts under limited circumstances does not amount to a specific intent to subject itself to federal jurisdiction. Accordingly, the Board is entitled to sovereign immunity against Ms. Doe's § 1983 claims.

      c.  <u>§ 1983 Monetary Relief (Bobbitt)</u>

Defendants assert that Donald Bobbitt, as an arm of the state, has sovereign immunity from Ms. Doe's § 1983 claims for monetary relief. The Court agrees. Ms. Doe is suing Mr. Bobbitt in his official capacity. (Doc. 2, p. 3). However, "the Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities." *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996). Therefore, Ms. Doe's § 1983 claims for monetary damages against Mr. Bobbitt are barred by sovereign immunity.

V.    **Failure to State a Claim**

      a.    University of Arkansas School of Law

Defendants assert that the "University of Arkansas Law School" lacks the capacity to be sued. (Doc. 13, pp. 10–11). Under Arkansas and federal precedent, campuses or departments of the University of Arkansas cannot sue or be sued. *Univ. of Ark. for Med. Scis. v. Adams*, 117 S.W.3d 588, 590 (Ark. 2003); *Assad-Faltas v. UAMS*, 708 F. Supp. 1026, 1029 (E.D.Ark. 1989), *aff'd*, 902 F.2d 1572 (8th Cir. 1990). Arkansas law provides that funding designated for law schools "shall be used by the Board of Trustees of the University of Arkansas solely for purposes of legal education . . . operated under the auspices and academic administration of the Schools of Law," including the University of Arkansas at Fayetteville School of Law. ARK. CODE ANN. § 6-64-606 (2022). Additionally, Ms. Doe herself alleges that "the Board of Trustees for the University of Arkansas and the CEO and President for the University of Arkansas System have managing authority for the University of Arkansas and its Fayetteville campus which includes the school of law." (Doc. 2, p. 3). Because the Law School is clearly a department or campus of the University of Arkansas, Ms. Doe's claims against the Law School must fail.

      b.    42 U.S.C. § 2000d

Defendants assert that Ms. Doe fails to state a claim under 42 U.S.C. § 2000d because her claim makes no mention of race, color, or national origin. (Doc. 13, pp. 11–12). Ms. Doe does cite § 2000d-7, but only for the proposition that Defendants lack sovereign immunity. (Doc. 2, p. 2). The Court does not take Ms. Doe to be stating a claim under § 2000d itself. To the extent that she attempts to, however, she has not succeeded because she has not mentioned race, color, or national origin in her complaint.

      c.    Disability Discrimination

Defendants assert that Ms. Doe fails to state a disability discrimination claim under the ADA. (Doc. 13, pp. 12–15). The Court disagrees.

As an initial matter, Defendants claim that Ms. Doe must prove that Law School officials "acted in bad faith or with gross misjudgment" because the law school is an educational institution. (Doc. 13, p. 15 (quoting *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.,* 732 F.3d 882, 887 (8th Cir. 2013))). However, as *Miller* itself makes clear, this standard only applies "[w]here alleged ADA and [Rehabilitation Act] § 504 violations are based on educational services for disabled children." *Miller*, 732 F.3d 882 (quoting *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000)). Ms. Doe is not a child. Therefore, the Court will not hold Ms. Doe's complaint to the higher *Miller* standard.

Ms. Doe claims she is entitled to relief under Title II of the ADA, 42 U.S.C. §§ 12132 *et seq.*, which concerns public services. (Doc. 2, p. 1.) "For a prima facie Title II ADA violation, a qualified individual with a disability must be excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or be otherwise discriminated against by the entity, by reason of the individual's disability." *Folkerts v. City of Waverly*, 707 F.3d 975, 983 (8th Cir. 2013). The ADA defines "disability" to include "an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A). Ms. Doe alleges that she was subjected to a psychiatric evaluation because of the Law School's "stated concern for [her] mental health." (Doc. 2, p. 14). Therefore, she has adequately pled that she was an "individual with a disability" for purposes of Title II.

Defendants claim that Ms. Doe's lack of cooperation with the examination rendered her unqualified to attend the Law School. (Doc. 13, p. 13). It cites *Shurb v. Univ. of Tex. Health Sci. Ctr. at Houston – Sch. of Med.*, 63 F. Supp. 3d 700 (S.D. Tex. 2014), for the proposition that failure

8

to cooperate with a medical inquiry renders a student unqualified.  In that case, the plaintiff had taken medical leave due to the effects of a suspected suicide attempt, missing two exams.  *Id.* at 703–04, 708.  The plaintiff had taken medical leave before and produced confirmation from his treating physicians that he was fit to resume classes before re-enrolling.  *Id.* at 703.  After the suspected suicide attempt, the plaintiff was not allowed to re-enroll or reschedule the exams until he provided the school with a discharge summary from the hospital and a report from his psychiatrist that he was not a danger to himself or others.  *Id.* at 704.  When he refused to do so, he was involuntarily withdrawn from his university.  *Id.* at 705.  The *Shurb* court granted summary judgment for the university, holding that no reasonable jury could find the plaintiff qualified to resume classes.  *Id.* at 708.

This Court finds *Shurb* distinguishable.  There, it was unquestionable that the plaintiff suffered from one or more health conditions that seriously interfered with his studies, having taken him out of school twice and caused him to miss two exams.  Here, by contrast, Ms. Doe alleges that she did nothing more than miss one ungraded assignment, show up to some classes without having done the reading, and report harassment she was experiencing.  None of this called into serious question her ability to complete her course of study.   In *Shurb*, the plaintiff had taken medical leave, and the school apparently required documentation of fitness to resume classes in order to re-enroll after medical leave, a policy which the plaintiff knew of and had complied with in the past.  Here, however, Ms. Doe was enrolled and in good academic standing when she was abruptly told to submit to a medical evaluation.  All in all, while the circumstances of *Shurb* may have allowed an inference on summary judgment that the plaintiff was not qualified to re-enroll, the allegations in this case do not allow the inference on a motion to dismiss that Ms. Doe was unqualified to remain enrolled.

For her part, Ms. Doe claims that she was a student in good standing prior to the incident and that the academic difficulties at issue were minor.  This indicates that she "meets the essential eligibility requirements for . . . participation in programs or activities provided by a public entity" at the Law School, rendering her "qualified" under 42 U.S.C. § 12131(2).  Accordingly, Ms. Doe has adequately alleged that she is a qualified individual with a disability who is entitled to the protections of the ADA and may not be excluded from participation in Defendants' program on the basis of her disability.

Finally, Defendants claim that the required mental health examination falls within an exception to the general rule against exclusion, pointing out that such examinations are an acceptable practice in the employment context and have been allowed in the educational context. (Doc. 13, pp. 13–14).  In a workplace setting, however, such "fitness for duty" examinations are forbidden unless they are shown to be "job-related and consistent with business necessity." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (quoting 42 U.S.C. § 12112(d)(4)(A)).  The "business necessity" must be vital to the business and the requested examination must be no broader or more intrusive than necessary.  *Thomas*, 483 F.3d at 527.  The employer bears the burden of proving that the examination complies with these requirements.  *Id.*  The only case cited by Defendants that approved of a mental examination in an educational setting cites exclusively employment cases to justify such examinations under the ADA.  *Yancey v. Bd. of Regents of Univ. Sys. of Ga.*, No. 4:11-CV-34 CDL, 2013 WL 3549767, at *6 (M.D. Ga. July 11, 2013) (citing, *inter alia, Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir.1999) (applying "job-related and consistent with business necessity" standard to reach conclusion quoted by *Yancey*)).[2]

---

[2] The other education-based case which Defendants cite for this proposition, *Shaboon v. Duncan*, does not address mandatory evaluation in the context of the ADA.  *See* 252 F.3d 722,

Defendants' only other authority on this point is itself an employment case.  (Doc. 13, pp. 13–14 (citing *Wisbey v. City of Lincoln*, 612 F.3d 667, 673 (8th Cir. 2010))).  While the Court welcomes further briefing on the applicable standard for initiating a medical examination in an educational setting, it presently takes the position that if Defendants wish to justify their actions under the employment rule, they must conform to the limitations that accompany that rule.  Accordingly, for purposes of this motion, the Law School's exam requirement needs to have been program-related, vital to its operation, and no broader or more intrusive than necessary.

Here, Ms. Doe alleges that the Law School "used its stated concern for [her] mental health to screen for disability absent any articulated finding of necessity relative to the provision of educational services."  (Doc. 2, p. 14).  This resulted in her being referred for mental health services, including counseling, and an order to undergo a psychiatric evaluation after the counseling agency told her that counseling was not necessary.  *Id.* at 10.  Taking Ms. Doe's claim as true, the examination was both unnecessary for educational purposes and unnecessarily intrusive.  Therefore, Ms. Doe has adequately alleged an impermissible exclusion based on disability.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's ADA discrimination claim will be denied.

d.  Retaliation[3]

---

729–32 (5th Cir. 2001) (discussing failure to turn over psychiatric records in context of procedural due process), 737 (discussing ADA claim only with regard to sovereign immunity).

[3] Ms. Doe phrases this claim as one for "retaliation and coercion."  (Doc. 2, p. 16).  Defendants analyze retaliation and coercion under separate headings, but their analysis is identical. (Doc. 13, pp. 16–18).  Many courts treat coercion as a form of retaliation and apply the same legal standard to both.  73 A.L.R. Fed. 3d. Art. 5, § 4.  The Eighth Circuit has not weighed in on whether retaliation and coercion are distinct, and district courts within the Eighth Circuit have come to different conclusions.  *See id.* at §§ 4–5.  Further, the Eighth Circuit has not articulated a separate test for coercion.  Accordingly, in line with the way in which it was presented, this Court treats

Defendants assert that Ms. Doe's suspension cannot constitute retaliation under the ADA. (Doc. 13, pp. 16–18).  The Court disagrees.

To state a claim for ADA retaliation, Ms. Doe must show "(1) [she] engaged in statutorily protected activity; (2) [she] suffered an adverse . . . action; and (3) a causal connection between the two."  *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 924 (8th Cir. 2018). Further, she must show that, but for her asserting her ADA rights, she would not have been suspended.  *Id.*  Here, Ms. Doe alleges that she opposed the Law School's examination requirement and was suspended as a result.  (Doc. 2, p. 4).  Opposition to an unlawful practice is a statutorily protected activity.  *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1100 (8th Cir. 2018).  As discussed above, Ms. Doe has adequately pled that the examination was unlawful.  Further, it is undisputed that Ms. Doe was ultimately suspended.  While it is true that Ms. Doe's suspension was also based on allegations regarding her dog, it seems unlikely that the dog incidents alone would have resulted in a permanent suspension, especially since no action was taken regarding them until Ms. Doe refused the examination.  Because of this, Ms. Doe has adequately pled that she would not have been suspended but for her asserting her ADA rights.  Therefore, Ms. Doe has stated a claim for ADA retaliation.

e. <u>FERPA</u>

Defendants assert that Ms. Doe's claim under FERPA must fail because FERPA contains no private cause of action.  (Doc. 13, pp. 18–19).  Ms. Doe concedes that there is no private cause of action in the statute, but states that Defendants' conduct "constitutes a pattern and practice of

---

Ms. Doe's claim for "retaliation and coercion" as a unitary claim and resolves it under the retaliation standard.

violation of FERPA.  There need not be a private right of action in order for this court to intervene."
(Doc. 2, p. 21).

In fact, absent a private cause of action, the Court may not intervene to correct a FERPA
violation.  Article III of the Constitution limits the power of the federal courts to "cases and
controversies."  Where there is no legal avenue to obtain relief, there can be no case.  *See* Fed. R.
Civ. P. 12(b)(6).  Therefore, because the law does not enable Ms. Doe to bring an action against
Defendants for a FERPA violation, there is no FERPA-based "case" between the parties for this
Court to adjudicate.  Accordingly, Ms. Doe has failed to state a claim under FERPA on which
relief can be granted.

f.  Substantive Due Process

Defendants assert that Ms. Doe has failed to state a claim for denial of substantive due
process.  (Doc. 13, pp. 19–21).  The Court agrees.  "[T]here is no violation of substantive due
process unless misconduct of government officials that violates a fundamental right is 'so
egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' of
federal judges."  *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) (quoting *Cnty. of Sacramento
v. Lewis*, 523 U.S. 833 (1998) (quotation omitted)).  The misconduct alleged by Ms. Doe does not
rise to this standard.

Here, Ms. Doe alleges that she made repeated reports of on- and off-campus "abuse,
harassment, and violation," requesting some minor academic accommodations and an
investigation into the source of the harassment.  (Doc. 2, p. 9.)  As a result, Defendants ordered
Ms. Doe to submit to a psychiatric evaluation and to address all her complaints about the
harassment to one individual.  *Id.* at 10. When Ms. Doe refused to undergo the psychiatric
evaluation or release the results to a third party, she was placed on an interim suspension.  *Id.* at 4,

10.   The University's Code of Student Conduct reserves interim suspensions for circumstances where there is "reasonable cause, based on available facts, to believe that a student poses a significant risk of substantial harm to the health, safety, and welfare of others or to property or poses an ongoing threat to the disruption of…the normal operations of the University." *Id.* at 6. The grounds for suspension in Ms. Doe's case were failing to comply with the order to receive the evaluation and disclose the records to a third party, bringing a pet onto University premises, and "disorderly conduct" for leaving dog feces in the law school building. *Id.* at 4, 9.  Ms. Doe asserts that others brought their dogs to the Law School, that she complied when asked to remove her dog from University grounds, and that there was no proof that the feces was left by her or her dog. *Id.* at 6.

Even taking Ms. Doe's claims as true, they do not shock the conscience of the Court. Immediately ordering a psychiatric evaluation of an alleged harassment victim may not be a best practice in most cases.  Here, however, where the allegations were voluminous and the perpetrator was never identified, ruling out paranoia on the alleged victim's part was not so inappropriate as to be conscience-shocking.  Similarly, a suspension is undoubtedly a harsh sanction for failing to comply with a legally questionable examination, bringing a dog to campus while others had done the same in the past, and an uncorroborated allegation of leaving dog feces in the building. However, a dog in a law school could be seen in good faith as a "disruption," and Ms. Doe's failure to cooperate with the investigation as "interference with[] the normal operations of the University." Therefore, the imposition of a suspension does not shock the Court's conscience.  Accordingly, Ms. Doe has failed to state a claim for violation of substantive due process.

g.   Procedural Due Process

Defendants assert that Ms. Doe has failed to state a claim for denial of procedural due process.  (Doc. 13, pp. 21–25).  The Court agrees with regard to the permanent suspension but disagrees with regard to the temporary suspension.

The Supreme Court's procedural due process jurisprudence distinguishes between disciplinary and academic suspension from a university.  When a student is suspended as a disciplinary sanction, the student must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."  *Goss v. Lopez*, 419 U.S. 565, 581 (1975).  However, these requirements can be met by an "informal give-and-take between the student and the administrative body dismissing him."  *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978) (internal quotations omitted). When post-removal proceedings are available, a timely pre-removal meeting at which the student can be heard satisfies due process even if the evidence is not explained in detail at that time.  *Keefe*, 840 F.3d at 535.  When the dismissal is due to poor academic performance, however, the cases only require that "the student had prior notice of faculty dissatisfaction with his or her performance and of the possibility of dismissal, and [that] the decision to dismiss the student was careful and deliberate."  *Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir. 1986).  The category of academic grounds for dismissal is quite broad.  *See Horowitz*, 435 U.S. at 91 n. 6 (poor personal hygiene and erratic attendance were academic reasons for dismissing medical student).  However, Ms. Doe was specifically charged with failure to comply with University officials, harboring a dog on University premises, and disorderly conduct. (Doc. 2, p. 6).  Construing all facts in Ms. Doe's favor, these concerns are completely unrelated to

15

Ms. Doe's academic performance.  Accordingly, Ms. Doe was entitled to the procedural due process protections that accompany a disciplinary dismissal.

Under *Keefe*, Ms. Doe was entitled to a timely pre-removal meeting at which she could be heard.  However, Ms. Doe claims that she was placed on interim suspension "without discussion" and without knowledge that her lack of cooperation even put her at risk for suspension.  (Doc. 2, p. 11).  Therefore, Ms. Doe has properly claimed a violation of procedural due process with regard to the interim suspension.

With regard to the permanent suspension, Ms. Doe acknowledges that Defendants afforded her a "hearing and appeal process." (Doc. 2, p. 12).  Further, she does not plead that the evidence was not explained to her at the hearing.  However, she claims that the evidence which the hearing board relied on was insufficient to prove her guilt, raising an inference of bias.  *Id.* at 6–7.  Specifically, she claims that she was found responsible based on "the information contained in [her] file," but the file contained no proof that there was ever dog feces in the law building, let alone that her dog left it.  *Id.*  However, this is insufficient to state a claim for denial of procedural due process.

It is true that the Eighth Circuit allows a trial court to infer bias when a decision "is against the substantial weight of the evidence and inconsistent with ordinary practice on sanctions."  *Doe v. Univ. of Ark. – Fayetteville*, 974 F.3d 858, 865 (8th Cir. 2020).  However, that case is distinguishable.  The plaintiff there had introduced substantial evidence of his innocence through documents and third-party witnesses, but the disciplinary board ruled against him based wholly on his accuser's speculative testimony.  *Id.* at 864–65.  Here, Ms. Doe alleges that the charge was based on "two e-mails from an unidentified person stating feces was observed in the law school building on Sept. 25 and Sept. 28." (Doc. 2, p. 9).  On one of these dates, she alleges that her dog

was not on campus; on the other, she claims that her dog was on campus "only briefly in the morning." *Id.* Assuming that she testified accordingly at her hearing, her testimony does not constitute the substantial weight of the evidence pointing to her innocence. Indeed, even if she testified correctly, the dog could have left the feces on an earlier day or at an earlier time on the dates it was found. Therefore, the Court cannot infer bias as to the charge regarding the dog droppings.

Finally, Ms. Doe claims that she was deprived of an objective factfinder because the same individual imposed her interim suspension and conducted her administrative hearing. (Doc. 2, p. 27). The Court disagrees. Administrators are "entitled to a presumption of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven." *Ikpeazu v. Univ. of Neb.*, 75 F.2d 250, 254 (8th Cir. 1985). However, making a preliminary determination on the merits of a matter does not disqualify a judge or administrative body from making a later, final decision. *Withrow v. Larkin*, 421 U.S. 35, 56 (1975) (noting that a judge can preside at both a preliminary detention hearing and a criminal trial in the same matter, or decide both a motion for preliminary injunction and one for a permanent injunction in the same case). If this is the case in the federal courts, this Court sees no reason to impose a higher standard on universities. Ms. Doe further claims that the individual in question was biased because overturning the prior decision would have "function[ed] as an admission to culpability in a civil suit." (Doc. 2, p. 27). However, the Supreme Court has noted that an entity which changed positions in such a situation "would not implicitly be admitting error in its prior finding," but that the change would likely "reflect the benefit of a more complete view of the evidence afforded by an adversary hearing." *Withrow*, 421 U.S. at 57–58. So too here: where Ms. Doe had a better opportunity at the administrative hearing to present evidence in support of her own version of

17

events, ending Ms. Doe's suspension would not amount to a confession of earlier wrongdoing. Accordingly, Ms. Doe has not sufficiently alleged a biased adjudicator.

Without an inference of bias, Ms. Doe has failed to claim that her procedural due process rights were violated.  She was afforded a hearing and given access to the evidence.  Further, she does not contest her guilt as to disobeying a University official or harboring a dog on campus. Therefore, Ms. Doe has not stated a claim for denial of procedural due process with regard to the permanent suspension.[4]

## VI.    Conclusion

IT IS THEREFORE ORDERED:

- Ms. Doe's claims against the University of Arkansas School of Law are DISMISSED WITH PREJUDICE in their entirety.

- Ms. Doe's § 1983 claims against the Board of Trustees are DISMISSED WITH PREJUDICE.

- Ms. Doe's § 1983 claims for monetary damages against Mr. Bobbitt are DISMISSED WITH PREJUDICE.

- Ms. Doe's FERPA claim is DISMISSED WITH PREJUDICE.

- Ms. Doe's substantive due process claim is DISMISSED WITHOUT PREJUDICE.

- Ms. Doe's procedural due process claim arising from the permanent suspension is DISMISSED WITHOUT PREJUDICE.

---

[4] While Ms. Doe claims that her due process rights were also violated by use of arbitrary classification and irrebuttable presumption, *see* Doc. 2, pp. 26–27, her complaint does not detail what classification was made, how it was arbitrary, what was presumed, or what made the presumption irrebuttable.  Accordingly, she has not pled "sufficient factual matter, taken as true," to state a claim under this doctrine. *Schriener*, 774 F.3d at 444.

- Insofar as Ms. Doe brings a claim under 42 U.S.C. § 2000d, it is DISMISSED WITHOUT PREJUDICE.

- Ms. Doe's ADA claims for disability discrimination and retaliation (against Bobbitt and the Board of Trustees), as well as her procedural due process claim arising from the temporary suspension (against Bobbitt), remain for trial.

IT IS SO ORDERED this 28th day of November, 2022.

*/s/ P. K. Holmes,* III
P.K. HOLMES, III
U.S. DISTRICT JUDGE